# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2901 | **DATE** | 9/25/2012 |
| **CASE TITLE** | *Pirard v. Bank of America, N.A., et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the defendants' motion to dismiss [39-1] is granted in part. The Sherman Act claim is dismissed. The plaintiffs are given 14 days to reallege their antitrust claim. Given that the Court has granted the plaintiffs leave to amend their antitrust claim, it will not address at this time the defendants' request that the Court abstain. The defendants shall answer or otherwise plead within 14 days of the filing of the amended complaint.

■[ For further details see text below.]   Docketing to mail notices.

# STATEMENT

According to the plaintiffs' amended complaint, after the plaintiffs defaulted on a promissory note and mortgage they executed to purchase their house, Bank of America threatened to file a foreclosure action. According to the defendants, a foreclosure action has been filed in the Circuit Court of Will County. (Defs.' Reply, Dkt. # 50, at 1.) The plaintiffs then filed the instant suit against Bank of America and several other defendants alleging violations of the Federal Debt Collection Practices Act ("FDCPA") and federal antitrust laws, as well as state law claims under the Illinois Unfair Deceptive Trade Practices Act ("IUDTPA"), for slander of title, unjust enrichment and to quiet title. Briefly, the plaintiffs allege that the defendants have defrauded them by improperly assigning and recording their mortgage, forging documents, improperly collecting on the plaintiffs' debt, and violating federal antitrust laws. (Pls.' Resp., Dkt. # 49, at 2-3.) The defendants have requested that this Court abstain or, in the alternative, dismiss the amended complaint for failure to state a claim. For the reasons stated below, the motion is granted in part and denied in part.

As an initial matter, the Court notes that based on the manner in which the defendants have briefed their motion, it is not clear the legal bases on which they are moving to dismiss the case. In their opening motion, the defendants argue that because Bank of America is not a debt collector, it cannot have violated the FDCPA, and, thus, the claim should be dismissed. They then argue that the plaintiffs lack standing to quiet title, the plaintiffs fail to state a cognizable IUDTPA claim, the plaintiffs' slander claim is insufficiently pled, the unjust enrichment claim fails for want of an underlying claim, and the plaintiffs do not adequately allege antitrust violations. Then, in their conclusion, the defendants refer back to a previously-filed motion to dismiss and argue that the *Younger* and *Colorado River* doctrines require this Court to abstain.

In their reply, however, the defendants do not address the FDCPA claim or any of the state law claims and instead, assert that the plaintiffs fail to state an antitrust claim and, because that claim should be dismissed, the Court should abstain from exercising jurisdiction over the remaining claims.[1] Based on the

**STATEMENT**

apparent turnabout and the fact that the defendants discuss only the antitrust and abstention arguments in their reply, those are the issues the Court assumes are currently before it. The Court does not address the FDCPA and state law claim arguments raised in the defendants' opening brief. Because the Court agrees that the plaintiffs have failed to state a claim under the Sherman Act, 15 U.S.C. § 1, the Court declines to address the abstention issues given that the plaintiffs are given leave to amend their complaint. The relevant facts are discussed as necessary in the analysis below.

The defendants move to dismiss the antitrust claims on the ground that it fails to state a claim. On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded allegations in the plaintiffs' complaint, drawing all reasonable inferences in plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint should give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "[D]etailed factual allegations" are not required, but the plaintiffs must allege facts that when "accepted as true . . . state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level." *Id*. at 555, 570.

While the defendants argue that the plaintiffs' antitrust claim should be dismissed under Section 2 of the Sherman Act, the plaintiffs claim in their reply brief that their antitrust claim is premised on Section 1 of the Sherman Act. In order to state a claim under Section 1, the plaintiffs must allege: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Agnew v. Nat'l Coll. Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012).

The Court notes at the outset that the plaintiffs' antitrust allegations seem to address purported fraudulent rather than anticompetitive behavior. For example, the amended complaint alleges that:

> 77. There is an agreement, a conspiracy, between Defendants Bank of America, Bank of New York Mellon, and MERS in which Defendants prosecute *false foreclosures*, supply *false reports* to credit reporting agencies, and threat[en] and *deceive* borrowers and courts of law into compliance with Bank of New York Mellon's wrongful behavior.

(Am. Compl., Dkt. # 30, ¶ 77) (emphasis added). The plaintiffs go on to allege that "Defendants' indiscriminate use of non-employee certifying officers has confused, misled, and deceived the courts and homeowners" (*id*. ¶ 82), and that the defendants "have deceived and misled borrowers about the implications of MERS's role as 'nominee' to the original mortgagee" and "concealed, and continue to conceal, vital information." (*Id*. ¶ 83.)

The only allegations regarding anticompetitive conduct are as follows:

> 78. This agreement constitutes a conspiracy in restraint of trade and has an appreciable effect on mortgages throughout the country by concealing from mortgagors the identity of their mortgagees and preventing mortgagors from refinancing. It thereby monopolizes mortgage business with mortgagors and freezes out legitimate banks.
> . . .
> 84. Defendants' actions have unreasonably restrained trade and had the effect, due to the glut of foreclosures based on sham documents that cloud title, of driving down home values, including the value of the Subject Property. Also, Defendants' actions enable them to foreclose wrongfully on tens of thousands of properties and thereby prevent the homeowners

**STATEMENT**

from refinancing with legitimate financial institutions.

(Am. Compl., Dkt. # 30, ¶¶ 78, 84.)

As an initial matter, the plaintiffs fail to allege or adequately explain the anticompetitive conduct. In their sur-reply, the plaintiffs state that the "[d]efendants' conduct is anticompetitive because it constitutes naked exclusion targeted directly at borrowers and non-member banks, to the detriment of borrowers, such as Mr. and Mrs. Pirard." (Sur-Reply, Dkt. # 52, ¶ 3.) But the plaintiffs fail to allege how the defendants' purported agreement to defraud borrowers constituted anticompetitive behavior.

Moreover, the plaintiffs have failed to allege how their alleged injury, a reduced value for their property, was the result of the purported anticompetitive behavior. *U.S. Futures Exch. LLC v. Bd. of Trade of City of Chi.*, No. 04 C 6756, 2012 WL 3155150, at *1 (N.D. Ill. Aug. 3, 2012) ("In order to have standing to bring an antitrust suit, a plaintiff must establish that its claimed injuries are 'of the type the antitrust laws were intended to prevent and reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation.'") (citation omitted). The plaintiffs allege that "[d]efendants' actions have unreasonably restrained trade and had the effect, due to the glut of foreclosures based on sham documents that cloud title, of driving down home values." (Am. Compl., Dkt. # 30, ¶ 84.) But the statement is conclusory and the plaintiffs fail to allege facts in support of any link between the purported anticompetitive conduct and the plaintiffs' alleged injury of a reduced home value. *Medrad, Inc. v. Sprite Dev., LLC*, No. 08 C 5088, 2011 WL 3900730, at *3 (N.D. Ill. Sep. 6, 2011) (the injury must be the result of anti-competitive behavior, meaning "injury resulting from acts that either reduce output or raise prices to consumers").

The motion to dismiss the antitrust claim is granted. The plaintiffs are given 14 days to reallege their antitrust claims.

---

1. The Court assumes that the defendants' request for abstention is conditioned on dismissal of the antitrust claims because federal courts have exclusive jurisdiction over federal antitrust claims. *In re Copper Antitrust Litig.*, 436 F.3d 782, 800 (7th Cir. 2006) ("The Supreme Court has long understood the antitrust laws as conferring exclusive jurisdiction on the federal courts to adjudicate federal antitrust claims.") (Wood, J., dissenting). If the antitrust claim is not dismissed, this could compromise the defendants' argument that the Court should abstain because the state court and federal court actions would not involve the same legal claims.