## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2901 | **DATE** | 3/19/2013 |
| **CASE TITLE** | *Pirard v. Bank of America, et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the defendants' motion to dismiss the antitrust claim [80-1] is granted. Because the plaintiffs have had several opportunities to properly plead that claim, the dismissal is with prejudice. The motion to stay the remaining claims [80-1] is granted. The case is placed on the Court's suspense docket and the parties are directed to notify this Court within seven days of completion of the state court case.

■ [For further details see text below.]        Docketing to mail notices.

**STATEMENT**

After the Court dismissed the federal antitrust claim in the plaintiffs' amended complaint and granted the plaintiffs leave to replead, the plaintiffs filed their third amended complaint ("TAC"). The defendants again move to dismiss the antitrust claim and ask the Court to abstain from considering the FDCPA and state law claims. For the reasons stated herein, the defendants' motion is granted.

The Court assumes familiarity with the factual background of the case. Briefly, the plaintiffs took out a mortgage to buy a house. (TAC, Dkt. # 70-1, ¶ 15.) After the plaintiffs purportedly defaulted, the Bank of New York Mellon ("Bank of New York") filed a foreclosure action in the Circuit Court of Will County, which remains pending. (*Id*. ¶ 25.) The plaintiffs then filed the instant suit against Bank of New York and Bank of America as well as several other defendants alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and federal antitrust laws, as well as state law claims under the Illinois Unfair Deceptive Trade Practices Act ("IUDTPA"), for slander of title, unjust enrichment and to quiet title. (*Id*. ¶¶ 34-94.) According to the plaintiffs, the defendants have defrauded them by improperly assigning and recording their mortgage, forging documents, improperly collecting on their debt, and violated federal antitrust laws as well as the FDCPA.

Federal Antitrust Claim

The defendants move to dismiss the Sherman Act antitrust count on the ground that it fails to state a claim. On a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded allegations in the plaintiffs' complaint, drawing all reasonable inferences in the plaintiffs' favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint should give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "[D]etailed factual allegations" are not required, but the plaintiffs must allege facts that when "accepted as true . . . state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level." *Id*. at 555, 570. In order to state a claim under § 1 of the Sherman Act, the plaintiffs must allege: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Agnew v. Nat'l Coll. Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012).

As in its prior order discussing the amended complaint, the Court again notes that the plaintiffs' allegations focus on the alleged fraudulent conduct among the parties while conclusorily alleging that

"[t]here is an unreasonable combination or conspiracy in restraint of trade or commerce" to record false title documents, send and collect on false bills, prevent the customers from making payments, refuse to modify the loans and initiate baseless foreclosure actions. (TAC, Dkt. # 70-1, ¶ 76.) However, under § 1 of the Sherman Act, a plaintiff must set forth "plausible allegations that the conspirators had a conscious commitment to a common scheme designed to achieve an unlawful objective or, in other words, a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Lit.*, 09 CR 3690, 2013 WL 212908, at *4 (N.D. Ill. Jan. 18, 2013) (internal quotations and citation omitted). Such plausible allegations are nonexistent here. The plaintiffs allege that "[u]pon information and belief, all of the Defendants have an agreement, a conspiracy, among themselves to carry out the . . . predatory scheme for the purpose of bilking the Pirards and taking their property by theft by false pretext." (*Id.* ¶ 88.) They further allege that:

> Defendant Bank of America ordered its employee to draft and sign the forged "Assignment," Defendant Bank of America put its name on the forged "Assignment," Defendant MERS agreed to lend its name to the forged "Assignment" as pretended "assignor," and Defendant Bank of New York Mellon agreed to act as strawman plaintiff and "assignee" under the forged "Assignment" to help Bank of America steal the Subject Property

(*Id.*) But, these allegations include no facts demonstrating a "conscious commitment to a common scheme" or a "unity of purpose" regarding unlawful conduct. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Lit.*, 2013 WL 212908, at *4.

Contrary to the plaintiffs' assertion, the allegation that "[t]he mortgage industry invented MERS to allow financial institutions to evade county recording fees, avoid the need to record publicly mortgage transfers, and to facilitate the rapid sale and securitization of mortgages en masse" is wholly insufficient. While this might be the plaintiffs' general theory regarding the formation of MERS, the allegation fails to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp.*, 550 U.S. at 556. Nor does the plaintiffs' allegation that Bank of America executed an assignment of mortgage from MERS to Bank of New York Mellon seven years after the Trust received "everything that was transferred to it" (TAC, Dkt. # 70-1, ¶ 20) furnish any factual support for a common scheme, contract or conspiracy among these defendants. The Court concludes that the plaintiffs have failed to allege a contract, combination or conspiracy under § 1 of the Sherman Act.

Moreover, the plaintiffs have again failed to allege how their purported injury, a reduced value for their property, was the result of the alleged anticompetitive behavior. *U.S. Futures Exch. LLC v. Bd. of Trade of City of Chi.*, No. 04 C 6756, 2012 WL 3155150, at *1 (N.D. Ill. Aug. 3, 2012) ("In order to have standing to bring an antitrust suit, a plaintiff must establish that its claimed injuries are 'of the type the antitrust laws were intended to prevent and reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation.'") (citation omitted). The plaintiffs contend in their response to the motion to dismiss that:

> [t]he antitrust harm was caused, with much more a reasonable degree of certainty, by the agreement of Bank of America and Bank of New York to become members of MERS. Bank of America and Bank of New York's membership allowed them to manufacture the standing to foreclose upon the Plaintiffs' property, when no standing really existed. This conduct violates the law, drives home prices down, floods the market with repossessed homes, which affects the output of the mortgage industry, and raises costs of, and the ability of others to obtain credit to purchase a home.

(Pls.' Resp., Dkt. # 85-1, at 17.) But, as the defendants note, the plaintiffs fail to allege how the purported agreement to execute a fraudulent assignment reduces competition. The plaintiffs' logical jump that an

agreement to execute fraudulent mortgage assignments led to a purported anticompetitive effect on the "output of the mortgage industry" and an alleged rise in the costs of buyers to obtain credit to purchase a home, or a reduction in home prices, is completely speculative and unsupported by fact.

Because, after several attempts, the plaintiffs have failed to allege a claim under § 1 the Sherman Act, that claim is dismissed with prejudice.

<u>Abstention as to Remaining Claims</u>

The defendants next ask that the Court abstain from considering the FDCPA and state law claims under the *Younger* and *Colorado River* abstention doctrines. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Younger v. Harris*, 401 U.S. 37, (1971).

"The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *SKS & Assocs. Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010). "The civil brand of *Younger* extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government." *Id*. at 678. Moreover, *Younger* is "appropriate only when there is [a state judicial or administrative] action against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007). Here, while there is a foreclosure proceeding in state court against the plaintiffs, it is not the state that is seeking to enforce the law. Nor are the plaintiffs asking this Court to enjoin or interfere with the state court foreclosure proceedings; rather, they ask this Court to adjudicate claims related to the state court case. For these reasons, the Court concludes that *Younger* abstention is inapplicable.

Abstention is appropriate under *Colorado River* if the state and federal actions are parallel, exceptional circumstances warrant a stay and a stay would promote "wise judicial administration." *Colorado River*, 424 U.S. at 818. The Supreme Court has admonished courts that in addressing abstention, the task of the district court "is not to find some substantial reason for the exercise of federal jurisdiction" but instead "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of that jurisdiction." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1993) (emphasis omitted)). If the Court determines that the actions are parallel, then it must weigh the following factors in deciding whether to abstain:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Huon*, 657 F.3d at 647-48 (citation omitted).

Generally, two suits are parallel when they "involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006). Both the state court foreclosure action and this action involve many of the same parties including the plaintiffs, the Bank of New York Mellon, and MERS. While Countrywide and Bank of America are not parties to the foreclosure action, cases are parallel even if they are not entirely symmetrical if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr. v. Brant Constr.*, 780 F.2d 691, 695 (7th Cir. 1985). Here, the plaintiffs have alleged that the defendants violated state and federal law by improperly assigning and recording their mortgage, forging documents, and improperly collecting on the plaintiffs' mortgage debt. An entry of judgment of foreclosure against the

plaintiffs in state court will substantially, if not fully, resolve the plaintiffs' claims here to quiet title and for slander of property, unjust enrichment, and violations of the FDCPA and the IUDTPA. Therefore, the Court concludes that the actions are sufficiently parallel to support *Colorado River* abstention. *Charles v. Bank of Am., N.A.*, No. 11 C 8217, 2012 WL 6093903, at *4 (N.D. Ill. Dec. 5, 2012); *Petit v. Wash. Mut. Bank, F.A.*, 12 C 318, 2012 WL 3437287, at *4 (N.D. Ill. Aug. 14, 2012).

    Moreover, the Court concludes that the *Colorado River* factors to be considered in step two of the analysis weigh in favor of abstention. The foreclosure action was filed in state court in February 2012, and the state court has assumed jurisdiction over the property. An answer was filed in the state court action on December 12, 2012 while this case, which was filed two months after the foreclosure action, remains at the motion to dismiss stage. Thus, factors one, four, and seven, whether the state court has assumed jurisdiction over the property, the order in which jurisdiction was obtained and the relative progress of the state and federal proceedings, favor abstention. Most of the claims asserted by the plaintiffs in the instant action are Illinois state law claims with the exception of the FDCPA claim, which could be resolved in state court, and the plaintiffs do not suggest that the state court is incapable of properly addressing their claims or protecting their federal rights. Thus, factors five, six, and eight, the source of governing law, the adequacy of the state-court action to protect the federal plaintiffs' rights, and the presence or absence of concurrent jurisdiction, also point to the proper exercise of abstention. Moreover, given that the plaintiffs' claims are likely to be substantially, if not fully, resolved by the foreclosure action, factor three, the desirability of avoiding piecemeal litigation, favors abstention. Factor two, the convenience of the federal forum, is neutral as the state and federal fora are relatively close. The defendants, having assumed that the antitrust claim would be dismissed, do not contend that the plaintiffs' federal claims are vexatious or contrived; thus, factor ten is also neutral. Finally, while it appears that the plaintiffs could have removed the foreclosure action to federal court under diversity jurisdiction, they did not; therefore, this factor weighs in favor of abstention.

    Because most of the factors favor abstention and two are neutral, the Court concludes that it is appropriate to abstain from addressing the plaintiffs' remaining claims pending resolution of the state court foreclosure action.

    The defendants' motion to dismiss the antitrust claim [80-1] is granted. Because the plaintiffs have had several opportunities to properly plead that claim, the dismissal is with prejudice. The motion to abstain from considering the remaining claims [80-1] is granted. The case is placed on the Court's suspense docket and the parties are directed to notify this Court within seven days of completion of the state court case.